Filed 1/15/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DAVID VEGA,<br><br>Defendant and Respondent. | F065909<br><br>(Super. Ct. No. VCF260981A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County. Joseph A. Kalashian, Judge.

Tim Ward, District Attorney, Shani D. Jenkins, Assistant District Attorney, Afreen A. Kaelble, John F. Sliney, and Barbara Greaver, Deputy District Attorneys for Plaintiff and Appellant.

Salvatore Sciandra and Lisa M. Sciandra for Defendant and Respondent.

**INTRODUCTION**

When the underlying felony offense specifies imprisonment in the county jail and an enhancement to that felony specifies imprisonment in state prison, which provision controls placement of the felon when he or she is denied probation? The People contend

the trial court imposed an illegal sentence when it modified its commitment of defendant David Vega from five years in a state prison facility to five years in the county jail pursuant to Penal Code[1] section 1170, subdivision (h), the Criminal Justice Realignment Act of 2011 (Realignment Act).  More specifically, the People assert that because Health and Safety Code section 11379.7, subdivision (a), a sentencing enhancement, expressly requires an additional punishment of "two years in the state prison," defendant was not eligible for county jail placement.  This is so, it is argued, even though the underlying offense of which defendant was convicted would otherwise allow for a local jail commitment.  We agree and remand for resentencing.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

As a result of an investigation following a traffic stop in Oregon where four pounds of methamphetamine were seized, Tulare County law enforcement officials were advised of a possible methamphetamine manufacturer operating out of a residence in Pixley, California.  When officials served a search warrant on defendant's residence, an active methamphetamine laboratory was found.  Present in the home were defendant's wife and their 7-, 10-, and 17-year-old children, as well as their 19-year-old son, his 17-year-old girlfriend, and defendant's seven-month-old grandson.  A search revealed significant amounts of methamphetamine in various forms of production.  Also found were various items used to "cook" or convert the drug, indicia of drug sales, varying sums of currency, and over 200 grams of marijuana.  At about the same time, defendant was taken into custody at his place of employment.  An inventory search of his vehicle yielded more than $20,000 in cash.

The Tulare County District Attorney filed a felony complaint on December 9, 2011, alleging the following crimes:  count 1—manufacturing a controlled substance, to

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]The facts are taken from the 52-page crime report that was made a part of the clerk's transcript on appeal.

2.

wit: methamphetamine (Health & Saf. Code, § 11379.6, subd. (a)), including a special allegation that the offense occurred in a structure where a child under the age of 16 years was present (*id.*, § 11379.7, subd. (a)); count 2—possession of methamphetamine for sale (*id.*, § 11378); and counts 3 through 6—child endangerment (§ 273a, subd. (a)).

On March 9, 2012, before a preliminary hearing, the court gave an "indicated sentence" of five years. Thereafter, defendant pled no contest to manufacturing methamphetamine (Health & Saf. Code, § 11379.6) and admitted the special allegation that minors were present in the structure where the manufacturing took place (*id.*, § 11379.7, subd. (a)). The remaining counts were dismissed, and the parties agreed the special allegation barred section 1170, subdivision (h) eligibility for purposes of count 1. In May 2012, defendant was sentenced to five years in prison: three years for the manufacturing offense and an additional two years for the presence of the minors in the structure where the manufacturing occurred.

Following defendant's commitment to state prison, the California Department of Corrections and Rehabilitation asked the court to review its sentencing determination because it had concluded the "the commitment offense … meets the criteria to serve the commitment in a county jail facility" in accordance with "Assembly Bill 109, the Criminal Realignment Act." Over the People's objections, at a hearing in August 2012, the court modified defendant's sentence. More particularly, the court sentenced him "to the Tulare County Jail pursuant to … Section 1170(h) for the lower term of two years, plus an additional and consecutive three years for a total of five years. [¶] … Two years of the sentence is suspended …." The People appeal this sentence.

## DISCUSSION

### *The Applicable Statutes*

As a result of the Realignment Act, numerous offenses previously punishable by specified terms in state prison are now punishable by serving that same term in local custody at the county jail. (Stats. 2011, ch. 15, §§ 2-633; Legis. Counsel's Dig., Assem.

3.

Bill No. 109 (2011–2012 Reg. Sess.), Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, §§ 4–11; Legis. Counsel's Dig., Assem. Bill No. 17 (2011–2012 1st Ex. Sess.); see § 1170, subd. (h).)  The legislation altered the housing arrangements for individuals convicted of certain felonies.  It "shifted responsibility for housing and supervising certain felons from the state to the individual counties."  (*People v. Cruz* (2012) 207 Cal.App.4th 664, 671.) It also provided the new sentencing provisions are to be applied prospectively to persons sentenced on or after October 1, 2011.  (§ 1170, subd. (h)(6); Stats. 2011, 1st Ex. Sess. 2011, ch. 12, § 12.)

Section 1170, subdivision (h) provides, in relevant part:

"(1) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years.

"(2) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense.

"(3) Notwithstanding paragraphs (1) and (2), where the defendant (A) has a prior or current felony conviction for a serious felony described in subdivision (c) of Section 1192.7 or a prior or current conviction for a violent felony described in subdivision (c) of Section 667.5, (B) has a prior felony conviction in another jurisdiction for an offense that has all the elements of a serious felony described in subdivision (c) of Section 1192.7 or a violent felony described in subdivision (c) of Section 667.5, (C) is required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1, or (D) is convicted of a crime and as part of the sentence an enhancement pursuant to Section 186.11 is imposed, an executed sentence for a felony punishable pursuant to this subdivision shall be served in state prison."

Health and Safety Code section 11379.6, subdivision (a) provides as follows:

"Except as otherwise provided by law, every person who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance specified in Section 11054, 11055, 11056, 11057, or 11058 shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three,

4.

five, or seven years and by a fine not exceeding fifty thousand dollars ($50,000)."

Health and Safety Code section 11379.7, subdivision (a) states:

"Except as provided in subdivision (b), any person convicted of a violation of subdivision (a) of Section 11379.6 or Section 11383, or of an attempt to violate subdivision (a) of Section 11379.6 or Section 11383, as those sections relate to methamphetamine or phencyclidine, when the commission or attempted commission of the crime occurs in a structure where any child under 16 years of age is present, shall, in addition and consecutive to the punishment prescribed for the felony of which he or she has been convicted, be punished by an additional term of two years in the state prison."

### The Parties' Positions

The People contend defendant was not eligible to serve his time in local custody because the special allegation or enhancement imposed pursuant to Health and Safety Code section 11379.7, subdivision (a) expressly provides punishment be in the form of an additional "two years in the state prison." The People assert the facts underlying the special allegation amount to aggravating circumstances, and the Legislature meant to punish such an offense more harshly. Further, the People maintain the Legislature did not overlook Health and Safety Code section 11379.7 or intend to include it in the Realignment Act.

On the other hand, defendant contends the enhancement must follow the punishment imposed for the base term since an enhancement is not an offense. Because the punishment for the base term allows for the sentence to be served in local custody, defendant maintains the trial court properly modified his sentence to permit the entire term to be served in the Tulare County jail. Defendant asserts he is not excluded from serving his term in local custody pursuant to section 1170, subdivision (h)(3). He argues the Legislature's failure to include Health and Safety Code section 11379.7 in its 2011 overhaul is "almost certainly due to a drafting oversight," and the "conflict" between

5.

Health and Safety Code sections 11379.6 and 11379.7 cannot be reconciled by the plain language of the realignment statute.

*Our Analysis*

The issue presented on appeal is one of first impression. In order to determine whether the trial court issued an unauthorized sentence when it modified defendant's sentence to permit him to serve his term in local custody, we must determine in the first instance whether an enhancement that expressly provides for a term in state prison requires the entire sentence be served in state prison even where the base or underlying offense would permit service of that term in local custody.

We note at the outset the parties agree defendant was not disqualified from being sentenced pursuant to section 1170, subdivision (h) by virtue of a current or prior conviction for a violent or serious felony, a prior conviction in another jurisdiction for an offense with corresponding elements of a violent or serious felony described in section 667.5 or 1192.7, because he is required to register as a sex offender or because an enhancement pursuant to section 186.11 was imposed. (§ 1170, subd. (h)(3).) We accept these assertions.

In this case, the trial court apparently believed section 1170, subdivision (h) applied because (1) Health and Safety Code section 11379.6 specifically provides for punishment "pursuant to subdivision (h) of Section 1170"; and (2) the enhancement provision of Health and Safety Code section 11379.7 did not come within the exceptions specifically referenced in section 1170, subdivision (h)(3). While this seems to be a logical interpretation of section 1170, subdivision (h), we believe the court's analysis skips a step in attempting to resolve the conflict in the statutes.

> """When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.'" [Citation.] "[W]e begin with the words of a statute and give these words their ordinary meaning." [Citation.] "If the statutory language is clear and unambiguous, then we need go no further." [Citation.] If, however, the language supports more than one reasonable construction, we may consider "a variety of

6.

extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.] Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' (*People v. Sinohui* (2002) 28 Cal.4th 205, 211–212; accord, *People v. Hagedorn* (2005) 127 Cal.App.4th 734, 741.) 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; accord, *People v. Mohammed* (2008) 162 Cal.App.4th 920, 927-928.)" (*People v. Torres* (2013) 213 Cal.App.4th 1151, 1160.)

Section 18, subdivision (a) provides the general rule for sentencing felonies. It states: "Except in cases where a different punishment is prescribed by any law of this state, every offense declared to be a felony is punishable by imprisonment for 16 months, or two or three years in the state prison unless the offense is punishable pursuant to subdivision (h) of Section 1170." Thus, state prison remains the default punishment for felony convictions even after realignment, unless the offense is punishable pursuant to subdivision (h) of section 1170. Subdivision (h) of section 1170 harmonizes its language with section 18 by starting both paragraphs (1) and (2) with the phrase "Except as provided in paragraph (3), a felony punishable pursuant to this subdivision …." By its express language, paragraph (3) does not come into play until it is first determined that the felony in question is punishable pursuant to subdivision (h) of section 1170. Consequently, we conclude the trial court skipped a step in the analysis by referring to paragraph (3) to determine in the first instance whether subdivision (h) applied. We read

7.

subdivision (h) to require a determination of its applicability before considering the exceptions in paragraph (3). This means the conflict between the provisions of Health and Safety Code sections 11379.6 and 11379.7 must be resolved first to determine whether subdivision (h) of section 1170 has any applicability such as to take it outside of the general statutory requirements of section 18. Considering the applicable extrinsic aids for statutory construction, we conclude the legislative intent generally is to include enhancement provisions in the initial determination of whether sentencing under subdivision (h) of section 1170 applies.

First we note the Legislative Counsel's Digest supports this interpretation.

"'The Legislative Counsel's Digest is printed as a preface to every bill considered by the Legislature.' [Citation.] The Legislative Counsel's summaries 'are prepared to assist the Legislature in its consideration of pending legislation.' [Citation.] Although the Legislative Counsel's summaries are not binding [citation], they are entitled to great weight. [Citation.] 'It is reasonable to presume that the Legislature amended those sections with the intent and meaning expressed in the Legislative Counsel's digest.' [Citation.]" (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1169-1170.)

Here, the Legislative Counsel's Digest for Assembly Bill No. 109 (2011-2012 Reg. Sess.) noted:

"The bill provides exceptions to imprisonment in a county jail *for a variety of felonies*, including serious felonies and violent felonies, as defined, felonies requiring registration as a sex offender, and when the defendant has a prior conviction for a serious or violent felony, or a felony subjecting the defendant to registration as a sex offender, *among other exceptions*." (Italics added. <http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201120120AB109&search_keywords=> [as of Jan. 15, 2014].)

This shows the Legislature was aware there would be "other exceptions" to the felonies for which confinement in county jail pursuant to section 1170 would be permitted beyond those noted in subdivision (h)(3). As such, both the wording of section 1170, subdivision (h) and the preface of the Legislative Counsel's Digest support a finding of legislative intent to limit section 1170, subdivision (h)'s application to felonies

8.

and circumstances beyond the exceptions provided in subdivision (h)(3). An enhancement calling for a state prison commitment, in our opinion, qualifies as such an exceptional circumstance.

To support the trial court's determination, defendant makes a distinction between a term imposed on an offense and a term imposed as an enhancement. But we find this to be a distinction without a difference for purposes of the question presented. We agree enhancement provisions generally increase the punishment for specified criminal acts. "They focus on *aspects* of the criminal act that are not always present and that warrant additional punishment." (*People v. Ahmed* (2011) 53 Cal.4th 156, 163.) We acknowledge "[c]onduct enhancements cannot be imposed standing alone as additional punishment. By definition, an enhancement is 'an additional term of imprisonment added to the base term.' [Citations.] For that reason alone, an enhancement cannot be equated with an offense. [Citation.]" (*People v. Izaguirre* (2007) 42 Cal.4th 126, 134.) In this instance, however, our conclusion does not amount to equating the enhancement with the offense. Rather, it is based on the aggregation of the terms imposed for both the offense and the enhancement to achieve the complete sentence or complete term for a given count. Whether the term is imposed pursuant to the underlying offense or an enhancement, there remain two terms to be served in a single aggregated sum. Because the term imposed pursuant to the enhancement here calls for confinement in state prison, we hold the entire term imposed must be served in state prison.

We do not find this conclusion to be at odds with the Realignment Act. The Legislature enacted the Realignment Act in response to rising rates of recidivism with the specific goal of increasing public safety while reducing costs. This intent was clear, as the Legislature's stated purpose for enacting the Realignment Act is codified in section 17.5. (Stats. 2011, ch. 39, § 5.) First, the Legislature declared that "[d]espite the dramatic increase in corrections spending over the past two decades, national reincarceration rates for people released from prison remain unchanged or have

9.

worsened. National data show that about 40 percent of released individuals are reincarcerated within three years. In California, the recidivism rate for persons who have served time in prison is even greater than the national average." (§ 17.5, subd. (a)(2).) Further, the Legislature declared that "[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and facilitate their reintegration back into society." (§ 17.5, subd. (a)(5).) The Realignment Act was therefore enacted with this particular framework and these particular purposes in mind.

We find nothing in the purpose of the realignment legislation suggesting the Legislature intended an enhancement such as the one at issue here was to be considered a low-level felony. A penal enhancement is designed to increase or make greater the punishment that would otherwise be imposed. The absence of any reference in section 17.5 to enhancements or special allegations we believe weighs in favor of a finding the Legislature intended the terms associated with enhancements or special allegations to remain unchanged unless specifically modified.

Our conclusion is also supported by the plain language of the enhancement statute itself. In this case, defendant's crime was manufacturing methamphetamine. But the crime is aggravated—and the punishment for the offense greater—where that manufacturing occurred in a structure where children under the age of 16 years were present. Health and Safety Code section 11379.7 was enacted because of the danger posed by methamphetamine labs to young people who have no choice but to be in close proximity to them. (Sen. Com. on Crim. Proc., Analysis of Assem. Bill No. 3392 (1995-1996 Sess.) as amended June 18, 1996, p. 2.)[3] Persons who commit the offense in the

_____

[3]<http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_3351-3400/ab_3392_cfa_960618_123738_sen_comm.html> [as of Jan. 15, 2014].

10.

presence of minor children are to be punished more harshly than those who do not. The enhancement adds an additional two years' confinement to the underlying offense, either a violation of Health and Safety Code section 11379.6, as here, or 11383. It expressly requires the term be served in state prison. We find the Legislature intended therefore that those persons who manufacture methamphetamine or PCP in the presence of minors are to be distinguished from lower level offenders; they are offenders properly committed to serve their terms in state prison. Logically then, we believe the Legislature never intended an enhancement provision such as Health and Safety Code section 11379.7 to be equated with a low-level offense subject to the Realignment Act provisions.

Defendant disagrees with the above conclusion pertaining to legislative intent and instead argues the plain language rule should not apply because the language was not changed due to an obvious legislative oversight. We disagree for several reasons.

First, we note that while the Legislature amended Health and Safety Code section 11379.6 so as to make section 1170, subdivision (h) applicable, it did not also amend Health and Safety Code section 11379.7, which is the very next section. This is so even though Health and Safety Code section 11379.7 is actually referenced in Health and Safety Code section 11379.6, subdivision (b).[4] It is highly unlikely this was a mere oversight.

Second, other similar enhancement provisions were amended to conform to application of section 1170, subdivision (h). For example, Health and Safety Code section 11353.6, subdivision (c), an enhancement providing for an additional term of imprisonment for certain narcotics sales at or near schools involving a minor four years younger than the defendant includes the language "imprisonment pursuant to subdivision

---

[4]That subdivision reads: "(b) Except when an enhancement pursuant to [Health and Safety Code] Section 11379.7 is pled and proved, the fact a person under 16 years of age resided in a structure in which a violation of this section involving methamphetamine occurred shall be considered a factor in aggravation by the sentencing court."

(h) of section 1170 ….” (See also § 600, subds. (c) & (d); Health & Saf. Code, §§ 1522.01, subd. (c), 11380.7, subd. (a).) If defendant's contention that enhancements cannot affect whether an offense is eligible for sentencing pursuant to section 1170, subdivision (h) were correct, the language "pursuant to subdivision (h) of Section 1170" would not be needed in any of these enhancement provisions.

Third, the Legislature's amendment of other sentencing statutes after enactment of the Realignment Act also tends to defeat defendant's legislative oversight argument. For example, until it was amended on June 27, 2012, former section 12022.1, subdivision (b) provided:

> "Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court."

After it was amended on June 27, 2012, section 12022.1, subdivision (b) now provides:

> "Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years which shall be served consecutive to any other term imposed by the court."

It is logical to conclude the Legislature would have corrected any legislative oversight of Health and Safety Code section 11379.7 at the same time. It did not and has not.

Finally, our conclusion is supported, we believe, by another amendment enacted following the imposition of the Realignment Act, as well as the reasoning behind our holding in *People v. Torres*, *supra*, 213 Cal.App.4th 1151.

We begin with section 669. The Realignment Act did not speak to where a prisoner should serve time if the court imposed *concurrent* sentences for a state prison offense and a county jail offense; it addressed only consecutive sentences. Hence, the

Legislature moved to amend section 669, adding the following language, effective June 27, 2012:

> "(d) When a court imposes a concurrent term of imprisonment and imprisonment for one of the crimes is required to be served in the state prison, the term for all crimes shall be served in the state prison, even if the term for any other offense specifies imprisonment in a county jail pursuant to subdivision (h) of Section 1170."

As we noted in *People v. Torres*, *supra*, 213 Cal.App.4th at pages 1159 through 1161,

> "[T]he language of subdivision (d) of section 669 tracks the language of the portion of section 1170.1, subdivision (a) that mandates, where consecutive sentences are imposed and at least one is to be served in state prison, service of the aggregate term in state prison even if one of the terms specifies imprisonment in the county jail pursuant to section 1170, subdivision (h)....
>
> "In our view, it would be illogical to treat concurrent sentences differently from consecutive sentences in terms of specifying where those sentences are to be served when the term for at least one offense must be served in state prison while the term for another offense must be served in a county jail due to realignment.…  [¶] … [¶]
>
> "We conclude section 669, subdivision (d) applies where, as here, the concurrent terms at issue were imposed in different courts and proceedings.  Express language at page 1 of the Senate Budget and Fiscal Review Committee, third reading analysis of Senate Bill No. 1023 (2011–2012 Reg. Sess.) as amended June 25, 2012, demonstrates the Legislature's intent, in amending section 669, was to *clarify* a point left unclear by the original realignment legislation.  Thus, regardless of whether section 669, subdivision (d) could be retroactively applied to defendant's case—a question we need not, and do not, decide—it is unmistakable that the Legislature's intent with respect to cases such as defendant's has always been that the entire sentence is to be served in state prison."  (Fn. omitted.)

The analysis in *People v. Torres* applies with equal force here.  In resolving the issue presented, it would be illogical to treat a term for an enhancement differently from a term for the underlying or base offense.

We recognize that enhancements are not principal or subordinate terms, as those words are used in section 1170.1.  Nevertheless, the same reasoning employed in *Torres*

13.

is relevant here. When a term is imposed that calls for that term to be served in state prison, any other term to be served—even one imposed by virtue of the underlying or base offense—must be served in state prison. (See *People v. Torres*, *supra*, 213 Cal.App.4th at p. 1159.)

To conclude, we hold that, absent evidence of a contrary legislative intent, where an enhancement specifically provides for a term to be served "in the state prison" the entire term imposed shall be served in state prison even where the underlying offense would otherwise be served in local custody.

### DISPOSITION

The judgment is reversed and remanded for resentencing.

_____
PEÑA, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
OAKLEY, J.*

---

*Judge of the Madera Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14.